**Hyman GOLD, doing business as Hi Mode Fashions and Monarch Fire Insurance Company, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. 13188.**

United States District Court
E. D. New York.

Sept. 5, 1957.

Wayne Van Orman, by Thomas F. Byrnes, New York City, of counsel, for plaintiffs.

Evans, Orr, Gourlay & Pacelli, by William F. Laffan, Jr., New York City, of counsel, for plaintiff Hyman Gold on Counterclaim.

Leonard P. Moore, U. S. Atty., Brooklyn, by Myron Friedman, Asst. U. S. Atty., Long Beach, N. Y., for defendant.

RAYFIEL, District Judge.

This action arises under the Federal Tort Claims Act, Section 1346(b) of Title 28 United States Code. The complaint alleges that an employee of the defendant, while acting within the scope of his employment, operated a Government-owned vehicle in such a careless and negligent manner as to cause it to collide with a vehicle owned by the plaintiff Hyman Gold, damaging it to the extent of $3,000; that Gold's vehicle was covered by a policy of $50-deductible collision insurance, issued by the plaintiff, Monarch Fire Insurance Company, under the terms of which the latter paid Gold the sum of $2,950; that as a result of such payment it became subrogated

---

to Gold's right to collect, and, therefore, demands payment of the sum of $2,950, while Gold demands the remaining $50 of said damage.

The answer denies the allegations of negligence, claims that the collision and the resultant damage was caused by the negligence of the operator of the Gold vehicle, and asserts a counterclaim for damages to the defendant's vehicle.

Shortly after 10:00 A.M. on October 11, 1952, Sam Scheidlinger, an employee of the plaintiff Gold, was driving the latter's automobile, a 1952 Chrysler Suburban station wagon, in a northerly direction along Kent Avenue, in Brooklyn, New York, while Lawrence S. Onody, an employee of the defendant, was operating a United States Navy fire truck, belonging to the defendant, in a southerly direction along said avenue.

Kent Avenue is a public highway, providing three lanes each for northbound and southbound traffic, which are separated by a continuous concrete barrier in which there is a break at Keap Street to permit access thereto from the southbound lanes of Kent Avenue. Each lane is about eight feet wide. It is at or near the intersection of Keap Street with the northbound roadway of Kent Avenue that the collision in question occurred. Only eastbound traffic is permitted along Keap Street.

Onody testified that he was proceeding along Kent Avenue in a southerly direction at the rate of about 20 miles per hour, occupying the most easterly (inside) of the three southbound lanes, and that as he approached Keap Street he observed plaintiff Gold's car approximately 200 feet south of Keap Street, moving in a northerly direction. Onody slowed down as he neared Keap Street, shifted his truck into low gear, and proceeded to make a left turn into Keap Street, occupying what would be the most northerly part of the roadway of that street, if it extended to that point. He testified further that his truck was about 24 feet in length, inclusive of the

rear step, and that two-thirds of it had crossed the nearest (most westerly) northbound lane when the front of Gold's car, which had been occupying the central northbound lane, collided with the right side of his truck at about the front (cab) door and the pump housing to the rear thereof. I have not overlooked the fact that Onody's testimony that he slowed down as he neared Keap Street is inconsistent with the statement in his report of the accident to the Motor Vehicle Bureau of the State of New York (Plaintiff's Exhibit No. 5) that he *stopped* before making a left turn into Keap Street. I am inclined, however, to believe the version offered at the trial.

Scheidlinger's testimony may be summarized and paraphrased as follows: He was proceeding north along Kent Avenue at the rate of 20 to 25 miles per hour, occupying the central lane; the roadway was wet and very slippery, and it was drizzling; he had reached a point about one and one-half blocks south of Keap Street when he observed the defendant's fire truck some two blocks north of Keap Street, approaching him; during the fire truck's progress toward Keap Street he neither saw nor heard any signal from it, but he conceded that he did not keep it under uninterrupted observation during that period; he had reached a point between 35 and 40 feet south of the intersection of Keap Street when he observed Onody making a left turn into Keap Street; he turned the steering wheel of his car to the right, and applied the brakes, but its speed did not decrease, and the left front of his vehicle collided with the right side of the fire truck.

Onody and Scheidlinger were the only witnesses who testified respecting the accident. Their testimony was rather unclear as to the movement of the vehicles after they first observed each other. Their versions of the positions of the vehicles as they approached Keap Street, and as to the collision and the events immediately preceding it, were in such conflict that most careful consideration

must be given to the physical facts and conditions revealed by the exhibits, namely, the place in the roadway where the collision occurred, the location on each vehicle of the resultant damage, and the indicated points of initial impact on each of the vehicles.

Diagrams, received in evidence as Exhibits A and B, indicate that the vehicles collided at a point in or near the most easterly northbound lane of Kent Avenue, and in the most northerly part of the roadbed of Keap Street, as extended. As hereinbefore stated, Scheidlinger testified that he had reached a point between 35 and 40 feet south of the intersection of Keap Street when he saw Onody making a left turn into that street. Actually, however, he was more than 40 feet from the point of collision, which, as aforesaid, occurred considerably north of the intersection of Kent Avenue and the southerly side of Keap Street. Since the barrier between the northbound and southbound traffic lanes of Kent Avenue was only a foot or so wide, the fire truck must have already made some progress in its crossing of at least the most westerly of said lanes when Scheidlinger observed it making a left turn. It would follow, then, that the fire truck had to traverse not more than 12 or 13 feet to reach the point of collision, while Gold's car was traveling approximately 70 feet. Assuming that the fire truck, having made its left turn, was then traveling at about 10 miles per hour, which appears reasonable, it is obvious that Gold's vehicle was moving at a far greater rate of speed than 20 to 25 miles per hour; else Scheidlinger, despite the then prevailing weather conditions, could have brought the Chrysler to a stop before reaching the point of collision, or otherwise avoided it.

I am convinced also of the error of Scheidlinger's claim that it was the left front of Gold's vehicle which initially came into contact with the fire truck.

Photographs of both vehicles as they appeared after the collision (Plaintiff's Exhibits 3 and 4 and Defendant's Exhibit B) clearly indicate that the *entire* front of Gold's car was smashed, and the hood buckled and forced against the engine block. As a matter of fact, Plaintiff's Exhibit 3 shows that the right front of Gold's car appears to have sustained even greater damage than the left front, a fact which is hardly reconcilable with Scheidlinger's version of the occurrence. The photograph of the fire truck shows that its side was struck a very short distance forward of its center, indicating that about one-third of it had already crossed Gold's car at the time of impact. It appears, then, that Gold's car struck the fire truck broadside, which would confirm *Scheidlinger's* statement that "I collided with this fire truck."

I am obliged, therefore, to conclude that Scheidlinger operated Gold's car in a careless and negligent manner, more particularly so because of the prevailing roadway, weather and traffic conditions, and that his negligence was the proximate cause of the collision.

I am satisfied, however, that Onody's own negligence contributed to the accident. While making the left turn he was in a position to observe Gold's car approaching Keap Street at a rapid rate of speed. It should have been manifest to him that, chiefly because of the prevailing weather and road conditions, a collision might be imminent if he continued his crossing of the northbound lanes of Kent Avenue. By doing so he failed to exercise the caution expected of a reasonably prudent driver.

For the foregoing reasons, judgment is rendered dismissing both the complaint and the counterclaim.

Submit proposed findings of fact, conclusions of law and judgment in conformity with the foregoing.